UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD CAPEN,<br>    Plaintiff,<br><br>v.<br><br>ROBERT B. OUR CO., INC.,<br>ROBERT B. OUR, III, and<br>CHRISTOPHER W. OUR,<br>    Defendants. | Docket No. 21-CV-12119 |

## **COMPLAINT AND JURY DEMAND**

### INTRODUCTION

1. Plaintiff Richard Capen ("Plaintiff" or "Capen") was an employee of Defendant Robert B. Our Co., Inc. ("RBO") from the beginning of 2017 until his abrupt "layoff" in July 2021, exactly one week after he informed his supervisor Robert B. Our, III ("Robert Our"), that he had scheduled a rotator cuff surgery and would need approximately four weeks off from work. Unfortunately, this was not the first time RBO had "laid off" an employee after they got injured.

2. RBO's actions were particularly outrageous because Capen had tried at every turn to be a team player. Capen had discussed his injury and eventual need for surgery with Robert Our on multiple prior occasions starting when he got a recommendation for surgery in or about April 2021. Capen intentionally delayed his surgery until after the busy summer season in order to minimize disruptions at work, even though this caused him substantial discomfort and there were days when he was unable to work due to the pain.

3. The reasons RBO gave for terminating Capen were false and pretextual or were, themselves, unlawful. Robert Our stated that it "made sense" to end Capen's employment then

1

because he was going to be out for his surgery, which indicates that RBO illegally decided to terminate Capen at that time because he was going to be taking a protected medical leave. Robert Our also mentioned that Capen had been out a lot over the preceding year or so, although many of Capen's absences were protected sick time or COVID-19-related leave protected under federal and/or state law.

4. By terminating Plaintiff as and when they did, Defendants unlawfully interfered and retaliated against Plaintiff for exercising his rights under state and federal law to take a medical leave in order to recover from surgery.

## JURISDICTION AND VENUE

5. This action arises under the Family and Medical Leave Act, 29 U.S.C. § 2615; and other relevant state and federal statutes and laws, as hereinafter more fully appears.

6. This Court has subject-matter jurisdiction over claims arising under federal law pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over claims under state law pursuant to 28 U.S.C. § 1367.

7. Venue is appropriate pursuant to 28 U.S.C. § 1391 because all Defendants reside in Massachusetts, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Barnstable County, Massachusetts.

## PARTIES

8. Plaintiff is a resident and citizen of Barnstable, Massachusetts.

9. Defendant RBO is a Massachusetts corporation with a primary place of business in Harwich, Massachusetts.

10. Defendant Christopher W. Our ("Christopher Our") is a resident of Massachusetts with a

residential and/or business address in Harwich, Massachusetts. At all relevant times, Christopher Our was the President of RBO.

11.     Defendant Robert Our is a resident of Massachusetts with a residential and/or business address in Harwich, Massachusetts. Robert Our was Capen's supervisor and had management of RBO, including hiring and firing authority over Capen.

## STATEMENT OF FACTS

*Background*

12.     Capen became an employee of RBO on or about January 1, 2017, after he sold a business called Capewide Enterprises to RBO.

13.     In conjunction with the sale of Capewide Enterprises, Capen executed a covenant not to compete with RBO that remains in effect until the end of 2021. Capen has fully complied with that agreement and continues to do so.

14.     Capen brought a number of employees with him to RBO and was a valued and loyal employee of RBO.

15.     Capen's personnel record contains no record of discipline or performance issues.

16.     In the four full years he worked for RBO, Capen received a bonus each year.

17.     Capen also received two raises in his time at RBO, most recently a raise of $10,000 per year in April 2021.

*Capen Requests a Medical Leave for his Serious Health Condition*

18. Beginning in or about April 2021, Capen had pain in his shoulder. There were some days when Capen was not able to go to work due to the pain, which he told RBO when he used sick time.

19. As the pain worsened, Capen sought medical attention and learned that he would need rotator cuff surgery, which would require him to be out of work for a period of weeks. Capen discussed his injury and his need for surgery with Robert Our on multiple occasions and told Robert Our that he would try to schedule his surgery so that he would not be out from work during the busiest summer season, even though postponing the surgery meant that Capen was in severe pain for a longer period of time.

20. Earlier in 2021, another employee had rotator cuff surgery and was out on medical leave longer than expected. While that employee was on leave, Capen substantially performed that employee's job as well as his own. On information and belief, Robert Our was unhappy with the amount of time that employee was out while recovering from surgery.

21. On or about July 15, 2021, Capen met with Robert Our and told him that he had scheduled his surgery for September 10, 2021. Robert Our told him that date would work and asked how long he would be out. Capen stated that he expected to be out for a minimum of 4 weeks, in part because he would be unable to drive himself to work, although he would make himself available if possible during that time.

22. At that time, neither Robert Our nor anyone else at RBO provided Capen with paperwork to apply for protected medical leave under the federal Family and Medical Leave Act (FMLA) or the Massachusetts Paid Family and Medical Leave Act (PFML), or informed him of the option to do so.

23.     Capen's shoulder injury, and the required recovery and rehabilitation period, involved inpatient care in a hospital and/or continuing treatment by a health care provider, including but not limited to surgery, medication, follow-up appointments, and physical therapy.

*Capen Is Terminated In Retaliation for His Protected Activity*

24.     On or about July 22, 2021, one week after Capen informed Robert Our of his need and scheduled date for medical leave, Robert Our informed Capen that he was being "laid off."

25.     Robert Our stated as reasons for the termination that Capen had been out of the office a lot over the course of 2020-21, and that it "made sense" to part ways at that time because Capen would be out of work for several weeks.

26.     Although RBO's records reflect approximately 17 absences from the beginning of 2021 until Capen's termination, most of these were for sick time: a stomach virus, exposure to COVID-19, and back or shoulder issues accounted for at least 7 absences, and 3 others are coded as "illness" without further explanation. Capen had more than enough sick and vacation time to cover all of these absences.

27.     At least two of these absences occurred when Capen had allergies that included symptoms consistent with COVID-19, such as sneezing and hay fever. Capen had significant responsibility for implementing RBO's precautions against COVID-19, and Capen felt it was important for him to set a good example and not come to work while he had COVID-like symptoms. On each of these occasions, Capen called Robert Our and asked him whether he should stay home, even though he believed he just had allergies, and Robert Our said he should.

28.     RBO's records for 2020 likewise do not reflect excessive absences by Capen. Since the beginning of his employment at RBO, Capen had been allotted four weeks of vacation time per

year. He did not use the full amount of vacation in 2020. Some of his absences were also covered under the federal Emergency Paid Family and Medical Leave Act (EPFMLA) due to the pandemic.

29. RBO had no legitimate, non-retaliatory reason for terminating Capen.

30. In addition, because RBO terminated Capen shortly after he informed RBO of his need for medical leave, his termination is presumed to be retaliatory under Massachusetts law.

31. On information and belief, RBO terminated Capen because he requested medical leave.

32. RBO's actions were unlawful and egregious in that they left Capen without a job in a global pandemic, with a serious medical condition that required surgery, while subject to a noncompetition agreement that prevented him from seeking other work.

33. To add insult to injury, after his termination, Capen contacted the private plan administrator with which RBO contracts in lieu of paying into the Massachusetts Paid Family and Medical Leave fund in order to seek Paid Family and Medical Leave (PFML) for his surgery. He spoke to multiple representatives, and each one incorrectly informed him that he could not apply for benefits through them because he was no longer employed at RBO, but would have to apply for the state. This advice seemed consistent with the administrator's application form, which did not clearly state that former employees could be eligible for benefits.

34. In fact, RBO's private plan, like the state program, is required to provide benefits for former employees within 26 weeks of their separation. Capen applied for PFML benefits through the state but his application was denied.

35. RBO is and was responsible for providing PFML benefits no less generous than those provided under the state PFML program, including to eligible former employees.

## COUNT ONE
## Family and Medical Leave Act
## Retaliation
## 29 U.S.C. § 2615
## (Defendant RBO)

36. Plaintiff incorporates and realleges the allegations stated in the previous paragraphs as if fully stated herein.

37. As of July 2021, Plaintiff was eligible to take up to 12 weeks of job-protected leave under FMLA due to his own serious health condition.

38. Plaintiff provided RBO with appropriate notice that he intended to take leave due to his own serious health condition.

39. RBO interfered with and retaliated against Plaintiff while he was seeking leave by, among other things:

   a. Failing to provide him with information concerning his FMLA rights or paperwork in order to request FMLA leave; and

   b. Terminating his employment because of his upcoming medical leave.

40. In addition, Plaintiff took leave for COVID-19-related reasons under the Emergency Paid Family Medical Leave Act (EPFMLA), which was covered under FMLA.

41. RBO retaliated against Plaintiff by terminating his employment based, in whole or in part, on his protected EPFMLA leave.

42. As a result of RBO's unlawful acts and practices, Plaintiff has suffered damages in an amount to be proven at trial.

COUNT TWO
Retaliation - Massachusetts Wage Act/Earned Sick Time
Mass. Gen. Laws ch. 149, §§ 148C, 150
(All Defendants)

43. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs.

44. Plaintiff made use of paid sick time under the Earned Sick Time Law for permissible purposes.

45. Defendants used Plaintiff's use of sick time as a negative factor in personnel actions when they terminated Plaintiff's employment, and otherwise retaliated against Plaintiff for his exercise of rights under Massachusetts wage and hour laws.

46. Christopher Our is, and at all relevant times was, the President of RBO, and is therefore considered an employer under the Massachusetts Wage Act.

47. Robert Our is, and at all relevant times was, an officer or agent of RBO having management thereof, with managerial responsibility over Plaintiff with regard to RBO's retaliatory actions, and is therefore considered an employer under the Massachusetts Wage Act.

48. As a result of Defendants' unlawful acts and practices, Plaintiff has suffered damages in an amount to be proven at trial.

COUNT THREE
Retaliation – Massachusetts Paid Family and Medical Leave Act
Mass. Gen. Laws ch. 175M, § 9, and 458 Code Mass. Regs. § 2.16
(Defendant RBO)

49. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs.

50. Plaintiff exercised his PFML rights by requesting a medical leave for his own serious

health condition.

51. RBO interfered with Plaintiff's PFML rights under the by, among other things:

   a. Failing to provide him with information concerning his PFML rights or paperwork in order to request PFML leave in a timely fashion; and

   b. Terminating his employment because of his upcoming medical leave.

52. Plaintiff commenced the taking of job-protected leave by informing RBO of his need for leave and anticipated date of surgery.

53. RBO retaliated against Plaintiff for seeking to take leave and otherwise exercising his rights under the PFML by terminating his employment.

54. RBO and/or its agents denied and/or further interfered with Plaintiff's PFML rights by incorrectly informing him that, because of his termination, he could not apply for PFML benefits through RBO's private plan but instead needed to apply for PFML benefits through the state Department of Family and Medical Leave, leading to the denial of his application for PFML benefits for his surgery.

55. As a result of RBO's unlawful acts and practices, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE PLAINTIFF REQUESTS THAT THE COURT ORDER:

a. That judgment be entered for him and against Defendants;

b. That Plaintiff be compensated for any loss of wages and/or benefits, damage to reputation and earning capacity, and other damages incurred as a result of Defendants' unlawful acts;

c. That Plaintiff be awarded an amount of money that will fairly compensate him for the emotional and physical pain and suffering caused by Defendants' unlawful acts;

d. That Defendants pay Plaintiff's costs and attorneys' fees resulting from this action;

e. That Defendants be ordered to pay Plaintiff multiple, liquidated, and/or punitive damages as permitted by applicable law;

f. That Defendants be enjoined from unlawful retaliation; and

g. Such relief as may be just and proper and/or that will make Plaintiff whole.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted,
RICHARD CAPEN,
By His Attorney,


 /s/David A. Russcol
David A. Russcol (BBO #670768)
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020
drusscol@zalkindlaw.com

Dated:  December 23, 2021